UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )

v.

MOHAMMAD "MOE" DIAB and          CRIMINAL NO. 1:19-cr-00374 (RDM)
RANI EL-SAADI, )

Defendants.

### RESPONSE TO COMMUNICATIONS REGARDING TRIAL DATE

1. The Court asked counsel for Mr, Diab to respond to Mr. Salgado's filing number 187 by February 14, 2022 at 4:00 PM Eastern Time.

2. Counsel and Mr. Diab have booked flights from Los Angeles to the District of Columbia on February 21, 2022, in anticipation of a trial starting on February 23, 2022.

3. In May 2019 the government charged Mr. Diab in a 64 indictment for among other matters lying to the FBI in March 2019.

4. The charges against Mr. Diab are relatively straightforward basically claiming he gave Hillary Clinton $250,000 which in fact was Mr. Khawaja's funds. This charge is rather simple. Although Mr. Diab made a voluntary statement to the FBI at his home in Los Angeles County, the agents never asked him where he got the funds, why he believed the funds were his, or even why he gave the funds to Hillary Clinton.

5. The agents were either incompetent or dishonest. That will be for the jury to determine, but for that trial Mr. Diab is ready.

6. The entire problem with the timing of this case is caused by the government. Mr. El-Saadi must go to trial promptly because the government has denied his request to travel overseas for several years. Also Mr. Khawaja would return if the government set bail rather than demand detention. If the government took a reasonable approach the issues here involved would never have occurred.

7. In a joint trial, Mr. Diab would also have to defend Mr. El Saadi because the

government insists there is an overall conspiracy which includes several other witnesses the government intends to call.

8. The government also claims and the Court has agreed that Mr. George Nader's involvement will also be part of the governments case to show the "background" of the case, Upon hearing this and learning the Court's response, Mr. Diab has requested that Mr. Khawaja's attorney trace all funds from Mr, Nader to prove no foreign funds went into the Clinton campaign. This evidence would be available by the time of trial. We have no evidence that the government has done such an analysis.

9. The government's representation that multiple witness will be inconvenienced if Mr. Diab were not joined is false. Mr. El Saadi's trial must go forward in any event and the Diab has agreed to await Mr. Khawaja's return to go to a joint trial which would mean the witness would need only one more appearance. The Court could put a time limit if it believed the extradition might be too prolonged.

10. The splitting of the persecution between Boston and the District of Columbia has been made more complicated because the government will call Rudy Dekermenjian, an attorney, whose responsiblity and duty it was to assure that all campaign funds were legally contributed. Even if he were incompetent as he now claims, Mr. Diab had a legal right to rely on a licensed attorney.

11. Mr. Diab has made every effort to cooperate with the difficulty imposed by the pandemic, and exacerbated by the government's strategics decisions to oppose travel by Mr. El Saadi and reject Mr, Khawaja's request to set bail.

12. Although counsel thought the case against Mr. Diab could be tried quickly, further understanding that the government was going to broaden its case to include Mr. Nader and the background as well as the addition of the necessary tracing of funds, means the my estimate of trial time must be raised to three weeks.

**CONCLUSION: Counsel believes the Court should grant the severance motion, try Mr. El Saadi's case, and take a waiver from Mr. Diab that he will agree to trial in Boston first or a trial with Mr. Khawaja in DC first, at the government's and Court's reasonable discretion.**

Harland W. Braun