**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AHMAD "ANDY" KHAWAJA, et al., | ) | Crim No.: 1:19-cr-00374 (RDM) |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT TO DESIGNATE MATERIAL WITNESS (18 U.S.C. § 3144)**

I, Kenneth B. Julian, hereby swear and affirm as follows:

1.      I am counsel for defendant Andy Khawaja ("Mr. Khawaja") in the present matter.

2.      The testimony of George A. Nader ("Mr. Nader") is material in the above-captioned criminal proceedings against Mr. Khawaja.  For the reasons set forth below, under 18 U.S.C. §3144, the Court should designate Mr. Nader as a material witness and issue an order directing: (1) that his deposition be taken under Federal Rule of Criminal Procedure 15 and/or (2) that he be arrested and treated in accordance with 18 U.S.C. §3142 (release and detention) pending Mr. Khawaja's trial.

A.      **Mr. Nader's Sex Offense Case and Freedom to Self-Deport**

3.      On January 13, 2020, in the Eastern District of Virginia, Mr. Nader entered into a plea agreement with the government under which he agreed to plead guilty to possession of child pornography, in violation 18 U.S.C. § 2252(a)(4) and (b)(2), and transportation of a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (the "Sex Offense"). (1:19-cr-00201-LMB, Dkt. #171, Plea Agr't, pp. 1-2.)

4.      Mr. Nader's Sex Offense plea agreement specifically included a provision under which the government "agreed to recommend to the Court that the Court's sentence should

include the opportunity for the defendant to voluntarily leave the United States at the conclusion

of any term of imprisonment."  (1:19-cr-00201-LMB, Dkt. #171, Plea Agr't, p. 5.)

5.       The Judgment in Mr. Nader's Sex Offense case states that he was sentenced to 10

years imprisonment, and that he was placed on intensive supervision for life.  If he voluntarily

leaves the United States, he will remain unsupervised as long as he remains outside the country:

> "Upon release from imprisonment, the **_defendant shall be on supervised release for a LIFE_** term as to each of Counts 1 and 5; to run concurrently.
>
> *                 *                 *
>
> **_The defendant may voluntarily leave the United States at the conclusion of his term of imprisonment_**. **_The term of supervised release imposed shall be unsupervised, so long as the defendant remains outside of the country._** However, should the defendant return to the United States for any reason during the term of supervised release he is required to contact the United States Probation office in Alexandria, Virginia within 48 hours and his term of supervision will be converted to supervised while he remains in the United States."

 (1:19-cr-00201-LMB, Dkt. #197, Criminal Judgment, p. 2-4 (emphasis added).)

**B.       Mr. Nader's Status as a Material Witness**

6.       Mr. Nader's testimony is material to the Indictment pending against Mr. Khawaja

in the present matter, Crim No.: 1:19-cr-00374 (RDM).  Mr. Nader's name appears

approximately 97 times therein.  The Indictment alleges, among other things, that Mr. Nader and

Mr. Khawaja conspired to (a) "willfully mak[e] contributions in the name of another person and

permit[] one's name to be used to effect such contributions"; (b) "willfully caus[ed] the

submission of material false, fictitious, and fraudulent statements and representations"; and

(c) "knowingly caus[ed] the concealment, covering up, falsifying, and making of false entries in

records, documents, and tangible objects."  (Dkt. #1, Ind., ¶ 23.)

7.      The Indictment alleges that Mr. Khawaja and Mr. Nader engaged in the aforementioned conspiracies to (a) "facilitate unlawful campaign contributions from" Mr. Nader through Mr. Khawaja to various political committees to "gain access to and influence with Candidate 1 and others during and following the 2016 U.S. Presidential election"; (b) "use their access to Candidate 1 to gain favor with, and potential financial support from, the government of Foreign Country A"; and (c) cause the various political committees to "unwittingly file false campaign finance reports concealing these unlawful campaign contributions from the FEC and the public by falsely stating that the contributions were made by [Mr. Khawaja] when in reality they were funded by [Mr. Nader]." (Dkt. #1, Ind., ¶¶ 24-26.)

8.      The Indictment alleges further that Mr. Khawaja and Mr. Nader carried out this conspiracy in, among the other ways, the following: Mr. Nader accompanied Mr. Khawaja "as his guest" to political fundraising events for which Mr. Khawaja had made contributions (Dkt. #1, Ind., ¶ 29(a)-(b)); Mr. Khawaja and Mr. Nader exchanged WhatsApp messages discussing the conspiracy and delivery of funds from Mr. Nader to Mr. Khawaja in connection with political fundraising events (Dkt. #1, Ind. ¶¶ 29(c)-(d), (f)-(g), (i)-(j), (w)-(x), (aa)-(bb), (dd)-(gg)); Mr. Khawaja and Mr. Nader falsified a financial transaction between Mr. Khawaja's company and Mr. Nader's company in order to disguise the transfer of money from Mr. Nader to Mr. Khawaja to use for unlawful campaign contributions (Dkt. #1, Ind. ¶¶ 29(k)-(v)); and Mr. Nader reported updates on his activities with Mr. Khawaja back to foreign officials (Dkt. #1, Ind., ¶¶ 29(b), (g), (i), (q), (s), (cc), (hh)-(ii), (rr)).

9.      Count Two of the Indictment alleges that Mr. Khawaja and Mr. Nader "willfully made contributions in the name of another person, and willfully permitted [Mr. Khawaja's] name to be used to effect such contributions." (Dkt. #1, Ind., ¶ 31.)

10.     Count Five of the Indictment alleges that Mr. Khawaja and Mr. Nader "knowingly and willfully caused the submission of a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government." (Dkt. #1, Ind., ¶ 37.)

11.     Counts Six, Seven, Eight, Nine, Ten, Eleven, and Twelve are all offenses charged against Mr. Khawaja and Mr. Nader together, in connection with the alleged unlawful campaign contributions.  (Dkt. Ind., ¶¶ 38-51.)

12.     On July 22, 2020, the government filed a Statement of Offense providing the factual basis underpinning Mr. Nader's guilty plea in this case.  That statement parallels the allegations against Mr. Khawaja in the Indictment.  Mr. Nader signed an acknowledgment under penalty of perjury attesting to his personal knowledge of the facts in the Statement of Offense and their purported accuracy.  (1:20-cr-00103-RDM, Dkt. #10, Stmt. Off., p. 16.)

13.     For example, the Statement of Offense copies nearly verbatim the allegations from Count One of the Indictment alleging a conspiracy by Mr. Nader and Mr. Khawaja.  (1:20-cr-00103-RDM, Dkt. #10, Stmt. Off., pp. 2-14.)  Mr. Nader's affirmation of the Statement of Offense clearly demonstrates that he is a material witness in Mr. Khawaja's case.

   **C.     Conduit Contribution Conspiracy/Mr. Nader's Right to Self-Deport**

14.     In July 22, 2020, Mr. Nader pled guilty in this Court to an Information charging Conspiracy in violation of 18 U.S.C. § 371 (Conspiracy to Make Conduit Contributions, Cause False Statements, and Cause False Entries in Records) (the "Contribution Conspiracy Offense"). (1:20-cr-00103-RDM, Dkt. #34, Sentencing Memorandum, p. 4.)

15.     The judgment for the Contribution Conspiracy Offense states that Mr. Nader was sentenced to 20 months imprisonment to run consecutively to the sentence of imprisonment in

the Eastern District of Virginia and that, upon release from imprisonment, he will be on

supervised release for a term of 36 Months.  (1:20-cr-00103-RDM, Dkt. #87, Criminal Judgment,

pp.2-3.)

16.     However, at the sentencing hearing on July 18, 2023, Mr. Nader's counsel

expressed that it was Mr. Nader's right to "self-deport immediately" upon release from

imprisonment.  (1:20-cr-00103-RDM, Dkt. #90, Sent. Tr. at p. 117:18-23.)  If Mr. Nader does

"self-deport," his 36-month term of supervised release would be tolled if *and until* he "were ever

to re-enter the country."  (1:20-cr-00103-RDM, Dkt. #90, Sent. Tr. at p. 118:2-16.)

17.     At sentencing, this Court directed that a "re-entry" hearing be set *after* Mr.

Nader's release from custody.  (*Id*. at p. 119:14-19.)  In this regard, the Criminal Judgment

states, in pertinent part: "Re-entry Progress Hearing – Within sixty days of release from

incarceration or placement on supervision, you will appear before the Court for a re-entry

progress hearing ….  You are ordered to appear for a Re-Entry Hearing before Judge Randolph

D. Moss."  (1:20-cr-00103-RDM, Dkt. #87, Judgment, p. 5.)

**D.      Impracticability of Securing Mr. Nader's Presence at Trial**

18.     Mr. Nader has emphasized that his close family resides in Lebanon: "[M]y family

and the people whom I love and who I care for, who I care about me the most, are back home in

Lebanon and in the Middle East ….  *Missing my family has been the worst part of all of this for*

*me*." (1:19-cr-00201-LMB, Dkt. #202, Sent. Tr. at p. 24:22-25:10 (emphasis added).)  At his

sentencing in the present matter, Mr. Nader told this Court, "I have seen none of my family

members and been deprived of … my contributions for the past four-plus years."  (1:20-cr-

00103-RDM, Dkt. #90, Sent. Tr. at p.99:13-17.)

19.     Mr. Nader's counsel further stressed to the Court his understanding that Mr.

Nader could "when he is done here, *self-deport immediately*."  (1:20-cr-00103-RDM, Dkt. #90,

Sent. Tr. at p.117:18-23 (emphasis added).)

20.     On or about December 22, 2023, after the sentencing on the Contribution

Conspiracy Offense, Mr. Nader's counsel made a motion in the Sex Offense matter for the *return*

*of Mr. Nader's passport*.  (1:19-cr-00201-LMB, Dkt. #233, Motion for Release of Passport

(emphasis added).)  On January 8, 2024, the Court granted the Motion for Release of Passport to

Mr. Nader.  (*Id*. at Dkt. #236, Order.)  In that order, the court stated: "[t]he Clerk's Office and/or

FBI is directed to release Mr. Nader's passport" to his counsel.  (*Id*.)

21.     BOP's Inmate Locater indicates that Mr. Nader's expected release date is

February 6, 2025.

22.     I am concerned that Mr. Nader may use his recently-returned passport to self-

deport from the United States within the 60-day window between his release from BOP custody

and the Re-Entry Hearing ordered before this Court.  (1:20-cr-00103-RDM, Dkt. #87, Judgment,

p. 5.)  The record supports a strong inference that Mr. Nader will self-deport upon release from

custody to avoid intensive sex offender supervision and to be reunited with his family and close

friends in Lebanon and in the Middle East.  Given the return of his passport, Mr. Nader will have

the present ability to do so.  If Mr. Nader so leaves the United States, it will be highly

impractical, if not impossible, to secure Mr. Nader's presence at trial by subpoena.

#### E.     Lead Time Required for Effective Deposition

23.     In order to take an effective deposition, especially one intended to substitute at

trial for Mr. Nader's live testimony, I will need to receive and review any discovery due under

Federal Rule of Criminal Procedure 16, *Brad*y, and *Giglio*, as it pertains to the Nader-related

portions of the Indictment.  That discovery is believed to be substantial and may involve

potentially sensitive information given Mr. Nader's publicly-known cooperation with the special

counsel's office investigating topics touching upon the 2016 election.[1]

24.     Based upon my investigation to date, I anticipate Mr. Nader will be the source of

substantial exculpatory evidence.  Additionally, Mr. Khawaja will request that Mr. Nader's

phones be searched for exculpatory communications in support of Mr. Khawaja's defenses for

trial that may not have been the subject of prior government searches of those devices.  Mr.

Nader's counsel reports that the government investigation involved searches of "six different

phones."  (1:20-cr-00103-RDM, Dkt. #90, Sent. Tr. at p. 83:8-15.)

25.     Accordingly, I am raising these issues now, so that these matters may be resolved

without undue delay or inconvenience to the Court, Mr. Nader, or the parties.

**F.**     **Updates Regarding Mr. Khawaja's Current Whereabouts and Status**

26.     Mr. Khawaja is currently released on conditions in Lithuania, including a

$750,000 cash bond.

27.     From approximately September 2020 through October 2023, Mr. Khawaja was

required to wear an ankle monitor.  In October 2023, because of his three-year record of

compliance, Mr. Khawaja's GPS ankle monitor was removed.

28.     Since October 2023, Mr. Khawaja has been free to travel within Lithuania.  Mr.

Khawaja is required to check-in thrice weekly with local police.

///

///

///

---

[1]  *See, e.g.*, "Adviser to Emirates With Ties to Trump Aides Is Cooperating With Special Counsel," NY Times
(3/16/2018).

29.     There is currently no date set for Mr. Khawaja's return to the United States.


Dated:  May 29, 2024                              Respectfully submitted,

                                                  /s/ Kenneth B. Julian
                                                  Kenneth B. Julian, DC Bar #CA00113
                                                  David Boyadzhyan, DC Bar #CA00115
                                                  MANATT, PHELPS & PHILLIPS
                                                  695 Town Center Drive, 14th Floor
                                                  Costa Mesa, CA 92626
                                                  Tel: (714) 338-2745
                                                  Email: kjulian@manatt.com
                                                         dboyadzhyan@manatt.com

8

**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | |
| AHMAD "ANDY" KHAWAJA, et al., | ) ) | Crim No.: 1:19-cr-00374 (RDM) |
| Defendant. | ) ) | |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to

the attorneys of record.

Dated:  May 29, 2024

Respectfully submitted,

/s/ Kenneth B. Julian
Kenneth B. Julian
DC Bar #CA00113
MANATT, PHELPS & PHILLIPS
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tel: (714) 338-2745
Email: kjulian@manatt.com

402936910.4