UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>AHMAD "ANDY" KHAWAJA, et al., )<br>)<br>Defendant. ) | Crim No.: 1:19-cr-00374 (RDM) |

## MOTION TO DESIGNATE MATERIAL WITNESS PURSUANT TO 18 U.S.C. § 3144, AND FOR DEPOSITION OR, IN THE ALTERNATIVE, DETAINMENT

Defendant Andy Khawaja ("Mr. Khawaja"), by and through his undersigned counsel, hereby moves this Court for an order finding that George A. Nader ("Mr. Nader") is a material witness under 18 U.S.C. § 3144 ("Section 3144"), and directing: (1) that his deposition be taken under Federal Rule of Criminal Procedure ("Rule 15") and/or (2) that Mr. Nader be treated in accordance with 18 U.S.C. § 3142 (release and detention) ("Section 3142") pending Mr. Khawaja's trial. Mr. Khawaja further moves for an order directing the government to produce any Nader-related discovery under Federal Rule of Criminal Procedure 16 ("Rule 16"), *Brady*, and *Giglio* in advance of Mr. Nader's deposition.

### I.    INTRODUCTION AND ARGUMENT

Concurrently with this motion, Mr. Khawaja's counsel has filed an Affidavit to Designate Material Witness under Section 3144 requesting relief and setting forth the facts and evidence upon which this Motion is based. *See* Affidavit of Kenneth B. Julian ("Julian Aff."). As set forth below, Mr. Khawaja has met his burden under Section 3144 and Rule 15. Moreover, Mr. Khawaja should not be barred from relief under the fugitive disentitlement doctrine.

Section 3144 provides that "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become

impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title." (Emphasis added). Rule 15(a) provides that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." (Emphasis added).

First, Mr. Khawaja is a "party" to this action, as the lead defendant in the Indictment. Indictment, ¶ 2, Dkt. #1. Second, Mr. Nader is a "material witness" because he is a central figure in one of two conspiracies charged in the Indictment (e.g., his name appears 97 times in the Indictment). Julian Aff., ¶¶ 6-13. Many actions and conversations underpinning the Indictment involve one-on-one chats and two-way conversations between Mr. Nader and Mr. Khawaja, or Mr. Nader and co-defendant and government witness Rudy Dekermenjian. *Id.*; Indictment, ¶¶ 29(c)-(j), (w)-(x), (aa)-(gg), Dkt. #1. As such, there can be no serious doubt that Mr. Nader is a material witness under Section 3144.

Third, "it may become impracticable to secure the presence" of Mr. Nader via subpoena. 18 U.S.C. § 3144; Julian Aff., ¶¶ 3-5, 14-22. Mr. Nader is scheduled to be released from custody on February 6, 2025. Under the applicable criminal judgments, Mr. Nader is free to self-deport from the United States; and via self-deportation, Mr. Nader will be able to avoid *lifetime* intensive sex offender supervision, to reunite with family and close friends in the Middle East, and to return to his birthplace. Julian Aff., ¶¶ 3-5,14-22. Equally important, Mr. Nader recently was granted return of his passport and further has a sixty-day window upon release from BOP custody to report to this Court. *Id.*, ¶¶ 18-22.

Mr. Khawaja is concerned that Mr. Nader may use his recently returned passport to self-deport from the United States within the 60-day window between his release from BOP custody

and the Re-Entry Hearing ordered before this Court, or even thereafter.  *Id.*, ¶ 22.  Or, he may even seek early release based upon a number of serious health conditions.[1]  It is self-evident that, if Mr. Nader self-deports or even absconds to the Middle East in violation of this Court's order, it will be "impracticable," if not impossible, to secure his presence at Mr. Khawaja's trial via subpoena.  Hence, Mr. Khawaja is entitled to relief under Section 3144 and Rule 15.

### A. Arrest and Detention, or Rule 15 Deposition, of Mr. Nader

Section 3144 authorizes the Court to further detain Mr. Nader or set conditions of release under Section 3142 or order the deposition of Mr. Nader.  18 U.S.C. § 3144.  Specifically, Section 3144 states: "No material witness may be detained because of inability to comply with any condition of release *if the testimony of such witness can adequately be secured by deposition*, and if further detention is not necessary to prevent a failure of justice."  (Emphasis added); *United States v. Nai*, 949 F. Supp. 42, 44 (D. Mass. 1996) ("A material witness may not be detained, however, if a deposition would suffice as an adequate alternative to the witness' live testimony at the proceeding.").

Mr. Khawaja submits that, if adequate discovery is provided in advance, and the deposition is recorded by videotape, it is reasonably possible that Mr. Nader's testimony could be adequately secured by deposition in a manner that is an adequate alternative to the witness's live testimony at trial.  *See Nai*, 949 F. Supp. at 44.  It may even be possible for this deposition to occur in advance of Mr. Nader's scheduled release date such that he can timely self-deport without being detained.

---

[1]  As reported to the Court, Mr. Nader suffers from heart disease, hypertension, and diabetes, and previously underwent emergency open heart surgery (quadruple bypass).  1:20-cr-00103-RDM, Dkt. #90, Sent. Tr. at p. 73:13-20.

3

On the other hand, if Mr. Nader refuses to be deposed, or if it is determined that his deposition would be an inadequate alternative to live testimony, the Court should consider detention of Mr. Nader under Section 3142. "If a material witness refuses to be deposed and it is impracticable to secure the appearance of that witness by subpoena, or if deposition testimony would not serve as an adequate alternative to the witness's live testimony, then the court must consider the issue of detention in accordance with 18 U.S.C. § 3142." *Nai*, 949 F. Supp. at 44. "Although Rule 15(a) employs the permissive 'may,' not the mandatory 'shall,' when read in conjunction with section 3144 it limits discretion to deny motions to depose material witnesses to instances in which the deposition would not serve as an adequate substitute for the witness' live testimony and a 'failure of justice' would ensue were the witness released." *United States v. Huang*, 827 F. Supp. 945, 948 (S.D.N.Y. 1993).

Rule 15(a) further provides that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." The facts presented in the Julian Affidavit provide exceptional circumstances, and the interests of justice and the purposes of Section 3144 would be served if the Court were to order Mr. Nader's deposition. If ordered, Mr. Nader's deposition should take place within the next few weeks or months, so it can be ascertained whether it is an adequate alternative to Mr. Nader's live appearance.

### B. The Court Should Order Limited Advance Discovery

Based upon the defense investigation, counsel for Mr. Khawaja anticipates that Mr. Nader will be the source of substantial exculpatory evidence and information. Additionally, Mr. Khawaja will likely request that Mr. Nader's phones be searched for custodians and exculpatory communications in support of Mr. Khawaja's defenses that may not have been covered or

anticipated in prior government searches of those devices.  Mr. Nader's counsel reports that the government investigation involved searches of "six different phones."  Julian Aff., ¶ 24.

In order to take an effective deposition, especially one intended to substitute at trial for Mr. Nader's live testimony, counsel for Mr. Khawaja will need to receive and review any discovery called for under Rule 16, *Brady*, and *Giglio*, as it pertains to the Nader-related portions of the Indictment.  Julian Aff., ¶¶ 23-25.  That discovery is believed to be voluminous and may involve sensitive information, given Mr. Nader's publicly known cooperation with the special counsel's office, which investigated topics touching upon the 2016 election.  *Id*.  Mr. Khawaja respectfully submits that it may be in the interest of the Court and the affected parties to resolve these issues in advance of Mr. Nader's release date.

C. **Request for Status Conference**

Concurrently with this Motion and the Julian Affidavit, Mr. Khawaja has filed a Request for Status Conference.  Mr. Khawaja is currently released on conditions in Lithuania, including a $750,000 cash bond.  Julian Aff., ¶ 26.  From approximately September 2020 through October 2023, Mr. Khawaja was required to wear an ankle monitor.  *Id*., ¶ 27.  In October 2023, because of his three-year record of compliance, Mr. Khawaja's GPS ankle monitor was removed.  *Id*.  Since that time, Mr. Khawaja has been free to travel anywhere within Lithuania and is required only to check-in thrice weekly with local police.  *Id.*, ¶ 28.  There is currently no date set for Mr. Khawaja's return to the United States.  *Id*., ¶ 29.

Under Rule 15(c) and the Confrontation Clause, Mr. Khawaja has a right to be present at Mr. Nader's deposition.  Fed. R. Crim. Pro. 15(c)(2) ("A defendant who is not in custody has the *right upon request to be present at the deposition, subject to any conditions imposed by the*

5

*court*") (emphasis added).  To facilitate this, Mr. Khawaja would be willing to appear before the Court from Lithuania via Zoom, if necessary.

### D. Mr. Khawaja Should Not Be Barred from Bringing the Present Motion

Mr. Khawaja anticipates that the government may seek to invoke the fugitive disentitlement doctrine; however, those efforts would not be well-taken.  Mr. Khawaja is no stranger to these proceedings.  In July 2021, when asked, Mr. Khawaja cooperated with the Court and the government to review thousands of pages of discovery so that the trial against other defendants could timely proceed.  *See* 1:20-mc-00117-RDM (under seal).  In February 2022, counsel for Mr. Khawaja attended the entire two-week trial of co-defendants Mohammad "Moe" Diab and Rani El-Saadi.

If the government raises the fugitive disentitlement doctrine, the Court should hold an evidentiary hearing to determine whether Mr. Khawaja is, or ever truly was, a fugitive.  In particular, for the past 3.5 years, since approximately early September 2020, Mr. Khawaja has been under arrest in Lithuania pursuant to the pending extradition proceedings.  Certainly, Mr. Khawaja cannot be considered a fugitive for this 3.5-year period of time in the constructive custody of the United States.  This is especially so because, as the government can attest, for the past three years, Mr. Khawaja repeatedly has sought to negotiate a joint bail recommendation with the government to facilitate his return to the United States.

Likewise, Mr. Khawaja's status as a "fugitive"—for the time period from December 2019, when he first learned of the Indictment, through his arrest in Lithuania in early September 2020—is far from clear.  For the majority of this eight-month period, COVID restrictions made Mr. Khawaja's travel back to the United States highly inadvisable and, at times, practically impossible.  In particular, in early December 2019, when Mr. Khawaja learned of the Indictment,

he was on a business trip to Japan, Singapore, and ultimately Doha, Qatar. Mr. Khawaja then traveled to Lebanon to spend time with his family, including his ailing father. While there, the COVID pandemic started, after which air travel was highly discouraged, if not regarded as dangerous. In March 2020,[2] Lebanon shut down Rafic Hariri International Airport in Beirut and it remained closed until July 2020.[3] After the airport reopened, in early August 2020, Mr. Khawaja traveled from Beirut, Lebanon to Vilnius, Lithuania to visit his wife's family. Mr. Khawaja was arrested while in Lithuania.

"Application of the fugitive disentitlement doctrine requires a two-step analysis. First, the Court must determine that the defendant is a fugitive under one of the two exclusive common law meanings of the term: the traditional fugitive, or the constructive-flight fugitive. Second, the Court must determine whether disentitling the defendant would 'serve the doctrine's objectives.'" *United States v. Cornelson*, 595 F. Supp. 3d 265, 270 (S.D.N.Y., 2022).

A "traditional fugitive," is "a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district." *Id.*, at 270. A "constructive-flight fugitive" is "a person who allegedly committed crimes while in the United States but who was outside the country – for whatever reason – when [he] learned that [his] arrest was sought and who then *refused to return* to the United States *in order to avoid prosecution*." *Id.* at 20-71 (emphasis added).

Mr. Khawaja meets neither definition of a fugitive. Mr. Khawaja did not flee the country after committing a crime, or to avoid prosecution. When indicted, Mr. Khawaja was already

---

[2] Azhari, Timour, "Lebanon will shut airport, restrict movement over coronavirus," AL JAZEERA (March 16, 2020) https://www.aljazeera.com/news/2020/3/16/lebanon-will-shut-airport-restrict-movement-over-coronavirus.
[3] Knecht, Eric, "Lebanon to re-open Beirut international airport from July 1: statement," REUTERS (June 12, 2020) https://www.reuters.com/article/idUSKBN23J2T4/.

living and travelling abroad, in substantial part for business.  The government chose to unveil the Indictment when Mr. Khawaja was out of the country.  Setting aside delays attributable to the COVID pandemic, it cannot reasonably be maintained that spending time with family, including Mr. Khawaja's elderly and infirm father—before returning to the United States to face serious charges—was an act of flight from prosecution.  Nor did it amount to a refusal to return to the United States, as Mr. Khawaja's attorneys were in continuous contact with the government and, at no point, did Mr. Khawaja "hide his whereabouts from United States authorities." *United States v. Hayes*, 99 F. Supp. 3d 409, 416 (S.D.N.Y.), aff'd on other grounds, 118 F. Supp. 3d 620 (S.D.N.Y. 2015).

Second, application of the fugitive disentitlement doctrine would not "'serve the doctrine's objectives.'" *Cornelson*, 595 F. Supp. 3d at 270.  The aims of the doctrine's application are: "(1) 'assuring the enforceability of any decision that may be rendered against the fugitive'; (2) 'imposing a penalty for flouting the judicial process'; (3) 'discouraging flights from justice and promoting the efficient operation of the courts'; and (4) 'avoiding prejudice to the other side caused by the defendant's escape.'" *Id.* at 272 (citations omitted).  None is achieved here by application of the doctrine.

As noted, Mr. Khawaja has been actively involved in this case and in regular contact with the government.  Mr. Khawaja has also followed the directives of the authorities in Lithuania—so much so that he no longer is required to wear an ankle monitor or remain within Vilnius.  Mr. Khawaja cooperated with the Court's orders and with respect to the criminal discovery process affecting co-defendants, and his counsel attended the jury trial of co-defendants.  Thus, there are no grounds to find that Mr. Khawaja would not abide by decisions of this Court.  For reasons already discussed, there is also no need to impose a penalty.

Mr. Khawaja wishes to bring this case to conclusion so he may be reunited with his family.  Finally, there is no prejudice to the government in granting the relief sought here because Mr. Nader is unquestionably an important witness for the government just as much as he is for Mr. Khawaja.

## II.    CONCLUSION

For all of the foregoing reasons, Mr. Khawaja respectfully requests that the Court issue an order finding that Mr. Nader is a material witness under Section 3144 and directing: (1) that his deposition be taken under Rule 15 and/or (2) that he be treated in accordance with Section 3142 pending Mr. Khawaja's trial.  Mr. Khawaja further requests an order directing the government to produce any Nader-related discovery under Rule 16, *Brady*, and *Giglio* in advance of Mr. Nader's deposition.

Dated:  May 29, 2024

Respectfully submitted,

/s/ Kenneth B. Julian
Kenneth B. Julian, DC Bar #CA00113
David Boyadzhyan, DC Bar #CA00115
MANATT, PHELPS & PHILLIPS
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tel: (714) 338-2745
Email: kjulian@manatt.com
          dboyadzhyan@manatt.com

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>AHMAD "ANDY" KHAWAJA, et al., )<br>)<br>Defendant. ) | Crim No.: 1:19-cr-00374 (RDM) |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

Dated: May 29, 2024

Respectfully submitted,

/s/ Kenneth B. Julian
Kenneth B. Julian
DC Bar #CA00113
MANATT, PHELPS & PHILLIPS
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tel: (714) 338-2745
Email: kjulian@manatt.com

402940398.7