UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> AHMAD "ANDY" KHAWAJA, et al., ) <br> ) <br> Defendant. ) | Crim No.: 1:19-cr-00374 (RDM) |

## MOTION FOR COMPULSORY PROCESS UNDER THE SIXTH AMENDMENT TO SECURE PRESENCE OF GEORGE NADER AT TRIAL

Defendant Andy Khawaja ("Mr. Khawaja"), by and through his undersigned counsel, hereby moves this Court for an order under the Compulsory Process Clause of the Sixth Amendment compelling George A. Nader's ("Mr. Nader") attendance at trial on May 5, 2025, and prohibit him from leaving the United States until his testimony in this trial has concluded. On May 29, 2024, Mr. Khawaja's undersigned counsel filed an affidavit designating Mr. Nader as a material witness under 18 U.S.C. § 3144. (Affidavit of Kenneth B. Julian ("Julian Aff."), Dkt. #249.) Mr. Nader's testimony is exculpatory and material to Mr. Khawaja's defense, and his absence from trial will severely and unduly prejudice Mr. Khawaja and will result in violation of Mr. Khawaja's Sixth Amendment right to compulsory process for obtaining witnesses in his favor.

I.     INTRODUCTION AND ARGUMENT

On May 29, 2024, Mr. Khawaja filed an affidavit under 18 U.S.C. § 3144 designating Mr. Nader as a material witness to his defense. (Julian Aff., Dkt. #249.) Mr. Khawaja also moved the Court for an order under Federal Rule of Criminal Procedure 15 to take Mr. Nader's deposition, or, in the alternative, for the Court to detain Mr. Nader after his release pursuant to 18 U.S.C. § 3142 ("Material Witness Motion"). (Material Witness Motion, Dkt. #250.) On June

27, 2024, after a hearing, the Court denied the Material Witness Motion. But the Court noted that "if there is something to be updated about [Mr. Nader's] release date and it turns out he is going to be released to a halfway house, you can come back to me with that information." (6/27/2024 Tr. at 17:10-25.)

### A. Mr. Nader Is a Material Witness, and the Circumstances of His Release Have Changed.

According to the Bureau of Prison's online Inmate Locator, Mr. Nader is still scheduled to be released on February 6, 2025. But Mr. Nader has since been relocated to a residential reentry facility in Baltimore.[1] As previously detailed in the Material Witness Motion, Mr. Nader is a central figure in this case, mentioned no less than 97 times in the Indictment. (Julian Aff., Dkt. #249, ¶¶ 6-13.) Much of the conduct in the Indictment involves conversations between Mr. Khawaja and Mr. Nader. (Indictment, Dkt. #1, ¶¶ 29(c)-(j), (w)-(x), (aa)-(gg).) There can be no serious dispute that Mr. Nader is a material witness in this case.

In addition, and as also detailed in the Material Witness Motion, in light of his negotiated plea deal and subsequent judgment, Mr. Nader is free to self-deport from the United States upon his release; Mr. Nader will be able to avoid *lifetime* intensive sex offender supervision, to reunite with family and close friends in the Middle East, and to return to his birthplace; and Mr. Nader has already been granted return of his passport. (Julian Aff., Dkt. #249, ¶¶ 3-5,14-22.) In short, there is nothing stopping Mr. Nader from leaving the United States upon his release, and, indeed, he has every reason to not stay in the United States.

//

//

---

[1] https://www.bop.gov/locations/ccm/cbr/.

### B. The Right to Compulsory Process Should Not Be Denied Based on the Fugitive Disentitlement Doctrine.

The Sixth Amendment states, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const., amend. VI. "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms *the right to present a defense*, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a *fundamental element of due process of law*." *Washington v. Texas*, 388 U.S. 14, 19 (1967) (emphasis added).

At the hearing on the Material Witness Motion, the Court continued to find that Mr. Khawaja was a fugitive and applied the fugitive disentitlement doctrine in denying the motion. (6/27/2024 Tr. at 23:11-27:20.) But the fugitive disentitlement doctrine is discretionary. *See Ajaka v. Gacki*, 557 F. Supp. 3d 45, 49 (D.D.C. 2021) ("The fugitive disentitlement doctrine is an equitable doctrine that permits a court, *in its discretion*, to dismiss a fugitive's 'appeal or writ of certiorari if the party seeking relief is a fugitive while the matter is pending.") (citations omitted) (emphasis added); *United States v. Osipov*, No. 22-CR-369-TSC-ZMF, 2024 WL 4367523, at *4 (D.D.C. Oct. 1, 2024) ("The Court next considers *in its discretion* if the fugitive disentitlement doctrine applies. The fugitive disentitlement doctrine is grounded in a court's power to control its own docket and proceedings.") (citations omitted) (emphasis added). And such discretion should not be exercised in the unique circumstances of this case to withhold from Mr. Khawaja a guaranteed right under the Sixth Amendment.

In *United States v. Biba*, 395 F. Supp. 3d 227, 240 (E.D.N.Y. 2019), for example, the court "decline[d] to apply the fugitive disentitlement doctrine in this case because doing so would extend the doctrine past its current confines and *deprive Defendant of fundamental rights guaranteed under Fifth and Sixth Amendments*. Although the doctrine is no doubt a well recognized and useful means of discouraging a defendant's flight, *it cannot be the case that a district court's discretionary tool can be used to deprive a defendant of a right guaranteed by the Constitution*." (Emphasis added). In that case, after the defendant was arrested and released on bail on an unrelated state rape charge, he "fled to Canada." *Id.* at 231. Defendant was then indicted while in Canada on the subject federal charges and "spent the next six years fighting extradition to the United States." *Id.* Defendant filed a motion to dismiss based, in part, on the Sixth Amendment's requirement for adequate notice "of the nature and cause of the accusations" against him. *Id.* (quoting U.S. Const., amend. VI).

The court in *Biba* "agree[d] that Defendant here clearly flouted the judicial process by fleeing to Canada." *Id.* at 240. But the court nonetheless declined to apply the fugitive disentitlement doctrine because "it is not clear that imposing the doctrine as the government requests is necessary to discourage future flight from justice." *Id.* The court in *Biba* thus not only considered the defendant's dispositive motion to dismiss on the merits, but the court also granted the motion in part. *Id.* at 241.

The holding in *Biba* is instructive. Here, the Court considers Mr. Khawaja a fugitive because Mr. Khawaja refuses to waive his extradition rights and voluntarily return to the United States since his arrest in Lithuania in 2019 at the request of United States authorities. But there is no requirement under United States law that Mr. Khawaja waive his extradition rights. Mr. Khawaja has been willing to return to the United States throughout the proceedings in Lithuania.

4

But the government has not been receptive to his overtures in seeking an agreement on bail (even though the government has made similar agreements and arrangements for bail for other similarly situated defendants, like Julian Assange and Sam Bankman-Fried).  Faced with an impossible situation, Mr. Khawaja now seeks at a minimum to preserve his constitutional right to present the facts of his case when he does return by seeking to preserve exculpatory evidence via the testimony of a critical witness, Mr. Nader.[2]  As in *Biba*, the Court's exercise of jurisdiction to bar Mr. Khawaja from such relief, based on the fugitive disentitlement doctrine, will "deprive [Mr. Khawaja] of a right guaranteed by the Constitution"—his Sixth Amendment right to Compulsory Process.  *See Biba*, 395 F. Supp. 3d at 240.

Further, application of the doctrine will also not serve its purposes, including the "need to redress the indignity visited upon the District Court by [defendant's] absence from the criminal proceeding, and the need to deter flight from criminal prosecution . . . ." *Degen v. United States*, 517 U.S. 820, 828 (1996).  Mr. Khawaja, through counsel, has been actively involved in this case and has shown the Court and the government no sign or indication of indignity.  In addition, given Mr. Khawaja's demonstrated desire to return to the United States, and his many years' long compliance with conditions of confinement in Lithuania, without any incident, there is no additional need to deter flight from criminal prosecution.

---

[2]  As noted in the Reply to Material Witness Motion, Mr. Nader is a material and exculpatory witness for Mr. Khawaja's defense.  For example, in a June 14, 2016, email to Mr. Khawaja, Mr. Nader referred to the agreement between their respective companies as an "agreement for consultation and services provided by [Mr. Khawaja's] company."  (Reply, Dkt. #256, at 3.)  In various 2016 communications between Mr. Nader and officials of the United Arab Emirates, Mr. Nader reported that (a) "Andy's dream is to . . . develop a Global Virtual Mega Mall based in Emirates," (b) "Andy is in Dubai to prepare recruitment and logistics" for the same; (c) UAE's Ruler wanted the "headquarters based in [Abu Dhabi]," (d) the "plan" was to "set up Headquarters in [Abu Dhabi] and develop global partnership from here," and (e) the UAE's Ruler had a "willingness . . . to facilitate and help with whatever it takes to get the business going!" (*Id.* at 4.)

In *Degen*, 517 U.S. at 829, the Supreme Court unanimously ruled that disentitlement "would be too rough" a punishment in a civil forfeiture action where the defendant, considered a fugitive, had not appeared for his parallel criminal case. In *Degen*, the government sought forfeiture of $5.5 million worth of real property after unsealing an indictment against the defendant. *Id.* at 821. The defendant sought to answer in the civil forfeiture action, but the district court struck defendant's answer and granted summary judgment to the government based on the fugitive disentitlement doctrine. *Id.* at 822. The Supreme Court reversed.

"The right of a citizen to defend his property against attack in a court is corollary to the plaintiff's right to sue there. . . . [T]he sanction of disentitlement is most severe and so could disserve purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Id.* at 828.

The High Court in *Degen* found the sanction of disentitlement too "rough" for a party seeking to protect and preserve his property rights in a civil case. In this case, the right at issue is not property, but *liberty*. Even if the Court continues to find Mr. Khawaja to be a fugitive, under *Degen* and like *Biba*, the sanction of disentitlement is too severe a punishment to withhold from Mr. Khawaja a right guaranteed to all criminal defendants. If Mr. Nader is not compelled to remain in the country, or his testimony otherwise preserved, Mr. Khawaja will lose a critical and material witness to his defense with exculpatory evidence to offer (as already demonstrated under 18 U.S.C. § 3144), thus resulting in violation of Mr. Khawaja's Sixth Amendment right to compulsory process of witnesses in his favor.

      C.      **The Present Facts Do Not Warrant Stripping Mr. Khawaja Of His Constitutional Rights.**

Federal Rules of Criminal Procedure 4 and 5 require that a criminal defendant be served with some form of process—an arrest warrant or summons—before making an initial appearance. When Mr. Khawaja left the United States for London on business in June 2019, he was not yet indicted. Although the government's investigation was ongoing, Mr. Khawaja was not asked or required by the government not to leave the country. Nor was he then served with a summons or warrant. The Indictment was filed on November 7, 2019. (Dkt. #1.) As detailed in the Material Witness Motion and Reply, Mr. Khawaja did not learn of the Indictment until December 2019, while he was still travelling internationally. Upon learning of the Indictment, Mr. Khawaja had every intention of returning to the United States after completing his business trip and visiting family in Lebanon and Lithuania. The intervening Covid-related closures in 2020 elongated Mr. Khawaja's trip—a factor entirely outside of his control. He was arrested in August 2020 in Lithuania before he could make his way back to the United States.

Since his arrest in Lithuania, Mr. Khawaja has followed all lawful process in that country and has meaningfully and voluntarily, through counsel, been involved in this case as well as the case in Massachusetts. There is no requirement under United States law that Mr. Khawaja waive his extradition rights in Lithuania; asking him to do so in exchange for enforcing a guaranteed constitutional right puts him in a constitutionally impermissible Catch-22.

Mr. Khawaja is a United States citizen and resident with a wife and young child and a family home in Los Angeles. He has every intention of returning to the United States to face the charges against him here and in Massachusetts, whatever the circumstances of that return may be. Mr. Khawaja has a right to compel the testimony of witnesses in his favor for his defense under the Sixth Amendment, regardless of his alleged fugitive status (which the facts illustrate is

7

not a proper designation under the circumstances).  Mr. Khawaja should not be disentitled from enforcing that right because of the unique and complex circumstances of his absence from the United States.

## II.   CONCLUSION

For all of the foregoing reasons, Mr. Khawaja respectfully requests that the Court issue an order under the Compulsory Process Clause of the Sixth Amendment compelling Mr. Nader's attendance at trial on May 5, 2025, and prohibiting him from leaving the United States until his testimony in this trial has concluded.[3]

Dated:  January 14, 2025

Respectfully submitted,

/s/ Kenneth B. Julian
Kenneth B. Julian, DC Bar #CA00113
David Boyadzhyan, DC Bar #CA00115
MANATT, PHELPS & PHILLIPS
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tel: (714) 338-2745
Email: kjulian@manatt.com
           dboyadzhyan@manatt.com

---

[3] In the alternative, the Court could order Mr. Nader's deposition to be taken under Federal Rule of Criminal Procedure 15.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.     ) <br> ) <br> AHMAD "ANDY" KHAWAJA, et al.,  ) <br> ) <br> Defendant.  ) | Crim No.: 1:19-cr-00374 (RDM) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

Dated: January 14, 2025

Respectfully submitted,

/s/ Kenneth B. Julian
Kenneth B. Julian
DC Bar #CA00113
MANATT, PHELPS & PHILLIPS
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tel: (714) 338-2745
Email: kjulian@manatt.com

403636907.1