UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 1:19-cr-00374 (RDM) |
| AHMAD "ANDY" KHAWAJA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THE UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION FOR COMPULSORY PROCESS**

In May 2024, Khawaja filed a motion to designate George Nader, his incarcerated co-defendant, as a material witness under 18 U.S.C. § 3144, and for a Rule 15 deposition. ECF No. 250. The Court denied the motion, finding there were no unusual or extraordinary circumstances that necessitated such relief. Minute Entry, 6/27/2024; ECF No. 258 (Transcript of Hearing on June 27, 2024) at 27-28. The Court further found that Khawaja is a fugitive, and the fugitive disentitlement doctrine barred him from seeking to invoke this Court's judicial power while simultaneously refusing to submit to it. *Id*. at 10-11, 23-27. Recognizing, however, that Nader would be released from custody on February 6, 2025, the Court set trial for December 9, 2024. *Id*. at 28-30; Minute Entry, 6/27/2024. Nader's appearance at trial was, therefore, "entirely in Mr. Khawaja's hands," and merely required him to "come back to the United States and we could have a prompt trial when Mr. Nader is here." *Id*. at 28.

The trial date came and went. Khawaja now seeks to litigate, for the second time, settled issues concerning his fugitive status, the disentitlement doctrine, and Nader's availability. *See* ECF No. 273. The Court already decided those issues – making them the law of the case – and granting Khawaja relief here would unjustly reward his ongoing fugitivity. Khawaja asserts that a change of circumstances justifies a different result now, but that claim is illusory – in the seven months

1

since the material witness hearing, the only thing that has changed is the proximity of Nader's release date. If Nader is unavailable at trial, it will be because of Khawaja, and not because of a "stripping" of his constitutional rights. *See* ECF No. 273 at 7. The Court should deny the motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Indictment charges that Khawaja engaged in a scheme to funnel more than $4 million in illegal campaign contributions into the 2016 election for President of the United States. *See generally* Indictment, ECF No. 1. As detailed in the Indictment, Khawaja believed the contributions were funded by a foreign government seeking to influence a U.S. election. In funneling the money, Khawaja sought to gain access to, and influence with, the Presidential candidate and other high-level U.S. government officials.

Following the 2016 Presidential election, Khawaja continued the scheme by funneling $1 million to the U.S. President-Elect's inaugural committee to gain further access to, and influence with, incoming U.S. government officials. In 2017 and 2018, Khawaja continued his scheme, funneling hundreds of thousands of dollars of illegal and excessive campaign contributions into political committees through his friends and business associates in a further effort to gain access to, and influence with, high-level elected officials. And in 2019, to conceal the scheme, Khawaja obstructed justice by telling a grand jury witness a false story about Khawaja's business dealings.

### A.     The Defendant's Status as a Fugitive

In November 2019, a federal grand jury sitting in the District of Columbia returned a fifty-three-count Indictment charging Khawaja and his co-defendants, including Nader, with crimes

2

stemming from the above-described scheme.[1]  As the Government explained in detail last summer in opposing Khawaja's motion to designate Nader as a material witness, Khawaja knew about the investigation into his campaign-related crimes, ran away from agents attempting to serve a search warrant, likely destroyed evidence of his crimes, and then fled the United States, having not returned in more than five years. *See* ECF No. 255 at 3-6.

In June 2024, the Court agreed that Khawaja is a fugitive in this case. *See* ECF No. 258 at 10 ("I am really not at all convinced that he is not a fugitive") and 23-26.

### B.    Nader's Role in the Conspiracy

Nader was one of Khawaja's co-conspirators in carrying out the schemes charged.  As part of his guilty plea, Nader admitted his involvement in working with Khawaja to funnel more than $3.5 million originating from Nader and/or a foreign government into political committees supporting one of the candidates for President in 2016.  *See Nader II,* Statement of Offense, ECF No. 10. In doing so, Khawaja and Nader sought to gain access to and influence with the Presidential candidate and other high-level U.S. government officials. *See id*. Nader admitted, among other things, that he and Khawaja conspired to conceal their crimes by using encrypted messaging, coded language, and a fake licensing agreement. *See id*.

### C.    Nader's Status

In June 2019, Nader was arrested on charges unrelated to this case.  *See United States v. Nader*, Arrest Warrant, ECF No. 19, No. 1:19-cr-201 (E.D.V.A. Jun. 3, 2019) ("*Nader I*"). Nader has remained in custody since that time.  He pleaded guilty and was sentenced in that case.  *See id*., at

---

[1] Khawaja is charged separately in the District of Massachusetts with conspiracy to commit bank fraud and wire fraud stemming from a $150 million payment processing scheme orchestrated by Khawaja and executives at his company, Allied Wallet, Inc.  *See United States v. Khawaja, et al.*, No. 21-cr-10250, ECF No. 150 (D. Mass. Sep. 26, 2023).

ECF Nos. 171, 196.  In July 2020, Nader pleaded guilty to a one-count Information, charging a violation of 18 U.S.C. § 371, for his role in the above-described conspiracy with Khawaja.  *United States v. Nader*, ECF No. 9, No. 1:20-cr-103 (RDM) (D.D.C. Jul. 22, 2020) ("*Nader II*").  On July 18, 2023, this Court sentenced Nader to twenty months' imprisonment to run consecutive to his sentence in *Nader I*.  *Id.* at ECF No. 87.

According to the BOP, Nader will be released on February 6, 2025, and is currently residing in a halfway house.  *See* BOP Inmate Locator, available at: https://www.bop.gov/mobile/find_inmate/byname.jsp. As part of the Judgment and Commitment Order in *Nader I*, Nader was permitted to self-deport following his release from incarceration. *Nader I*, ECF No. 197. However, this Court imposed the additional requirement that Nader appear for a reentry hearing within sixty days of his release from incarceration.  *Nader II*, ECF No. 87.

### D. Defense Motion to Designate Nader as a Material Witness

In May 2024, Khawaja filed a motion to designate Nader as a material witness under 18 U.S.C. § 3144 and requiring him either to sit for a Rule 15 deposition or to be detained indefinitely pending Khawaja's trial. ECF No. 250. The Government opposed the motion, arguing that Khawaja was a fugitive and should be denied relief under the fugitive disentitlement doctrine. *See* ECF No. 255. The Government further argued that Nader was not a material witness as defined by the statute and asked the Court to deny a Rule 15 deposition. *See id*.

On June 27, 2024, the Court denied the motion, finding there was no extraordinary or unusual circumstance that necessitates such relief. ECF No. 258. at 27-28; Minute Entry 6/27/2024. The Court agreed that Khawaja is a fugitive and applied the fugitive disentitlement doctrine in this case. *Id*. at 23-27. As the Court observed, "there is no doubt that the only reason he is not here is because he is avoiding these proceedings . . . and doesn't want to be subject to the

4

jurisdiction of the courts, which is, by definition, what it means to be a fugitive." *Id*. at 10-11. The Court found that disentitlement was appropriate because of a concern with "the absence of mutuality," in that Khawaja was seeking to obtain the fruits of the Court's judicial power without subjecting himself to any risk of an adverse ruling from the Court. *See id*. at 26-27.

As to Nader, the Court proposed a practical solution of setting Khawaja's trial "before Mr. Nader's sentence expires." ECF No. 258 at 15. The Court stated that if Khawaja wanted to ensure Nader's availability at trial, he only needed to "decide to come back to the United States. And it will be entirely in this power and authority to do so." *Id*. The Court said it "try the case while Mr. Nader is still in the United States so that won't be an issue. That is all in Mr. Khawaja's hands." *Id*. at 16. Understanding that Nader's release date was February 6, 2025, the Court set a trial date of December 9, 2024. *Id*. at 29; Minute Entry, 6/27/2024.

The defense proffered that Nader might be released to a halfway house "6 months or several months" before his February 2025 release – *i.e.*, before Khawaja's December 2024 trial – and posited that Nader might abscond and be unavailable. *See id*. at 16-17. In response, the Court stated, "if there is something to be updated about his release date and it turns out he is going to be released to a halfway house, you can come back to me with that information . . . . Let's see if there is an issue or not." *Id*. at 17.

The December 2024 trial date came and went. Khawaja remains a fugitive.

## II.     ARGUMENT

Khawaja seeks to litigate, for the second time, settled issues concerning Nader's availability and his own status as a fugitive. *See* ECF No. 273. Khawaja argues that he has a Sixth Amendment right to ensure Nader's availability at trial, which supersedes the continued application of the fugitive disentitlement doctrine. *Id*. at 3-5. He claims that the Court invited

5

Khawaja to file this motion because Nader is now in a halfway house and will soon be released from custody. *Id.* at 2. These toothless claims fail. First, Khawaja invokes § 3144 as the mechanism to exercise his Sixth Amendment rights, but the Court already considered and denied the § 3144 motion, which is now the law of the case. Indeed, it would unjustly reward Khawaja to grant this motion now, after he chose not to take the path that would guarantee Nader's availability – which was to return to the United States for a December 2024 trial. Second, the purported change in circumstances concerning Nader's release is illusory – the only difference is the proximity of Nader's the release date. Third, the Court should not depart from its prior finding that the fugitive disentitlement doctrine applies to Khawaja because the caselaw Khawaja relies on is inapposite. The motion should be denied.

### A.     The Denial of the Khawaja's § 3144 Motion is the Law of the Case.

Khawaja titles the present filing a "Motion for Compulsory Process under the Sixth Amendment to Secure the Presence of George Nader at Trial." ECF No. 273. By "compulsory process," Khawaja means the use of the Court's power, under § 3144, to compel Nader's attendance at trial by prohibiting him from leaving the United States indefinitely following his release from custody on February 6, 2025. *See id*. at 1.

The Court already considered and denied Khawaja's § 3144 motion. *See* ECF Nos. 250, 255, 258 at 23-28; Minute Entry, 6/27/2024.[2] The denial is now the law of the case. *See United States v. Trabelsi*, 28 F.4th 1291, 1298 (D.C. Cir. 2022) ("the *same* issue presented a second time in the *same* case in the *same court* should lead to the *same result*.") (internal quotation marks and citation omitted; emphasis in original). While reexamining a decided issue is possible, it requires

---

[2] In a footnote, Khawaja alternatively proposes that the Court order Nader to sit for a Rule 15 deposition. *See* ECF No. 273 at 8 n.3. But the Court already considered and denied that motion, too. ECF No. 258 at 27.

6

the presence of "extraordinary circumstances," such as "an intervening change in the law, a finding that the original decision was clearly erroneous, or if significant new evidence . . . has come to light." *Id*.

Here, Khawaja does not point to any qualifying extraordinary circumstance. He instead dedicates most of the motion to rehashing his already rejected arguments for why he is not a fugitive. *Compare* ECF 258 at 10-11, 23-26 *with* ECF No. 273 at 2, 5, 7. Indeed, despite the Court finding in July 2024 that "it fundamentally undermines . . . the fairness of the judicial process" for Khawaja to seek one-sided justice, ECF No. 258 at 26-27, seven months later he continues to do just that. It would be an unjust reward for Khawaja to remain a fugitivity and prevail on this motion. *See Dawkins v. Mitchell*, 437 F.2d 636, 649 (D.C. Cir. 1970) ("appellants [should not be able] to invoke only half our jurisdiction, *i.e.*, the winning side.").

### B. The Purported Change of Circumstances Concerning Nader is Illusory.

Khawaja claims that the Court invited him to relitigate Nader's status when it stated, at the July 2024 hearing, that "if there is something to be updated about [Nader's] release date and it turns out he is going to be released to a halfway house, you can come back to me with that information." ECF No. 258 at 17. Nader is in a halfway house, but Khawaja is wrong to conclude this means the door is open to relitigating a settled issue.

As an initial matter, Khawaja ignores the context of the Court's statement to create a false impression that the Court intended to reexamine what to do about Nader even if Khawaja remained a fugitive. When the Court said Khawaja could "come back to me" if Nader was released to a halfway house, the context of the remark was to ensure Nader's availability at the December 2024 trial – and with the presumption that Khawaja would come back for trial. *See* ECF No. 258 at 15-17. Of course, Khawaja chose not to come back, and now he owns the consequences of his

7

decision. *See* id. at 19 ("if he wants to guarantee that Mr. Nader will be here in the United States . . . it is within his power to make sure that he is back in the United States" for a trial before Nader was released); *see also Ortega-Rodriguez v. United States*, 507 U.S. 234, 240 (1993) ("the rule allowing dismissal of fugitives' appeals has rested in part on enforceability concerns, and in part on a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment."); *Barker v. Wingo*, 407 U.S. 514, 525-529 (1972) (defining waiver as the "intentional relinquishment of a known right or privilege" and holding, in the context of the right to a speedy trial, that "if delay is attributable to the defendant, then his waiver may be given effect under the standard waiver doctrine . . .").

### C. Khawaja Fails to Establish that His Rights Under the Constitution Require Vacating the Fugitive Disentitlement Doctrine.

Relying on two cases that are glaringly distinguishable from the posture here, Khawaja argues that the disentitlement doctrine must yield to his Sixth Amendment right to compel Nader's appearance at trial. *See* ECF No. 273 at 3. The argument is unpersuasive.

Khawaja first cites *United States v. Biba*, 395 F. Supp. 3d 227, 239-41 (E.D.N.Y. 2019), in which the district court denied the Government's request to apply the doctrine in response to a defense motion to dismiss counts in an indictment. In stating the facts of *Biba*, however, Khawaja omits the most important one: when the Government asked to invoke the doctrine, Biba was already back in the United States and his fugitive status was over. *Compare* ECF No. 273 at 4 *with Biba*, 395 F. Supp. 3d at 231.

Biba fled to Canada in late 2009 when he was indicted on robbery and firearms charges. *Id*. at 231. He was extradited to the United States in April 2016. *Id*. He moved to dismiss firearms counts four months later, in August 2016, arguing a pleading deficiency rendered the firearms

charges deficient under the Fifth and Sixth Amendment. *See id*. at 231-32 (discussing *Alleyne v. United States*, 570 U.S. 99 (2013)). The Government asked the district court to invoke the disentitlement doctrine, arguing that the defendant should not benefit from a change in the law that occurred while he was a fugitive. *See id*. at 237. In declining to apply the doctrine, the district court reasoned that the controlling precedent was inapplicable because Biba was under the district court's jurisdiction when he filed the motion. *See id*. at 240. Specifically, the district court found that the doctrine should apply "only after a defendant had either waived or already availed himself of his constitutional rights, *or where defendant was a fugitive at the time the doctrine was employed*." *Id*. at 240 (emphasis added).

Nothing in *Biba* suggests that this Court, as a matter of constitutional law, must refuse to apply the disentitlement doctrine to Khawaja. If anything, *Biba* supports continued application of the doctrine while Khawaja remains a fugitive. *See id*.

Khawaja next cherry picks from *Degen v. United States*, 517 U.S. 820 (1996), to argue that because the fugitive disentitlement doctrine was found to be "too rough" in that civil case, it must be the same here. *See* ECF No. 273 at 6. Khawaja misses the point of *Degen*.

The issue in *Degen* was whether a district court "may strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution." 517 U.S. at 821. The Supreme Court held that it was error for the district court to do so because it had jurisdiction over the subject matter in the forfeiture suit, even if one party litigated that suit from abroad. *See id*. at 821-28.

Degen was a dual citizen of the United States and Switzerland. *Id*. at 822. While in Switzerland, a non-extradition country, the Government unsealed a forfeiture complaint and criminal indictment against him. *Id*. The forfeiture action related to real properties located in the

9

United States. *Id*. at 821. Degen answered the forfeiture complaint from Switzerland, without subjecting himself to the criminal prosecution. *Id*. at 822. The lower court applied the disentitlement doctrine in the forfeiture case. *Id*. at 822. The Ninth Circuit affirmed, but the Supreme Court reversed. *Id*. at 821-22.

The Supreme Court held that the principles that supported disentitlement were not present in the forfeiture case "[s]ince the court's jurisdiction over the property is secure despite Degen's absence . . ." *Id*. at 825. Degen would receive no advantage from litigating the forfeiture case abroad, the Supreme Court held, because the district court had tools to sanction his noncompliance. *Id*. at 827. In *dicta*, the Supreme Court noted that it had not decided whether Degen was a fugitive and acknowledged "disquiet at the spectacle of a criminal defendant reposing in Switzerland, beyond the reach out of criminal courts, while at the same time mailing paper to the court in a related civil action and expecting them to be honored." *Id*. at 828.

*Degen* does not advance Khawaja's arguments here. Unlike the property in the forfeiture suit in *Degen*, here it is precisely the point of applying disentitlement here that the Court does not have jurisdiction over Khawaja. Nor do the facts of *Degen* bear any similarity to those here. This is a criminal case, not a civil one. Khawaja is a fugitive (a question not reached in *Degen*). And the spectacle of Khawaja seeking to obtain fruits of the Court's judicial power in his own criminal case are even more disquieting than in *Degen*.

\

\

### III.   CONCLUSION

Until Khawaja returns to the United States, he should be afforded no relief from this Court. His motion, whether considered under the law of the case doctrine or the fugitive disentitlement doctrine, should be denied.

                         Respectfully submitted,
                         COREY R. AMUNDSON
                         Chief, Public Integrity Section
                         Criminal Division
                         U.S. Department of Justice

By:   */s/ Trevor Wilmot*
                         **Trevor Wilmot**
                         Trial Attorney
                         GA Bar No. 936961
                         **Jordan Dickson**
                         Trial Attorney
                         CA Bar No. 324406
                         Public Integrity Section
                         Criminal Division
                         U.S. Department of Justice

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: January 27, 2025                                           */s/ Trevor Wilmot*
                                                                                           Trevor Wilmot
                                                                                           Public Integrity Section
                                                                                           Criminal Division
                                                                                           U.S. Department of Justice